# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | John W. Darrah |
|---|---|---|---|
| CASE NUMBER | 02-C-648 | DATE | 2-10-03 |
| CASE TITLE | Fidelity National Title Ins. Co. v. Westbank | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Judgment on the Pleadings (Doc. #8)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] . Enter Memorandum Opinion and Order. Defendant's motion for judgment on the pleadings is DENIED. Status hearing set for February 21, 2003 at 1:30 p.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | FEB 11 2003 | |
| | Notified counsel by telephone. | date docketed | 14 |
| ✓ | Docketing to mail notices. | 15 | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| FIDELITY NATIONAL TITLE INSURANCE COMPANY OF NEW YORK, a New York corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD SAV. BANK; BANK CALUMET, N.A.; CHARTER BANK & TRUST, N.A.; BRIDGEVIEW BANK & TRUST CO.; WESTBANK; FIRST NAT'L BANK OF LAGRANGE; BANK OF HOMEWOOD; STANDARD BANK & TRUST CO.; TCF NAT'L BANK ILL.<br><br>Defendants. | Nos. 02 C 643, 02 C 644, 02 C 646,<br>02 C 647, 02 C 648, 02 C 649,<br>02 C 651, 02 C 667, 02 C 668<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Plaintiff Fidelity National Title Insurance Company of New York (Fidelity) sued nine banks under the Illinois Uniform Fraudulent Transfer Act (UFTA), 740 ILCS § 160/5 *et seq.* alleging that an Illinois title insurer, Intercounty Title Company of Illinois (Old Intercounty) had fraudulently transferred certificates of deposit in excess of $7 million to the Bank Defendants. The Bank Defendants move to dismiss Fidelity's claims, primarily on the grounds that Fidelity did not file within the one-year limitations period imposed by the statute, that Fidelity has not pled fraud with sufficient particularity as required by Fed.

1

R. Civ. P. 9, and that Fidelity does not have a debtor-creditor relationship with some of the Bank Defendants as required by the UFTA. Defendants' motions to dismiss are DENIED.

## I. Factual Background

Fidelity alleges that from 1990 to June 2000, Larry Capriotti and Jack Hargrove used their title insurance companies to swindle money from their customers' escrow accounts. According to Fidelity, Capriotti and Hargrove involved the Bank Defendants in the pillaging of escrow account funds by using escrow funds for their personal benefit, namely by using the funds to purchase certificates of deposit (CDs) and then offering the CDs as collateral for personal loans. Fidelity further alleged that Capriotti and Hargrove concealed their scheme by doctoring their accounting books and deceiving escrow depositors, state regulators, and Fidelity. When Old Intercounty's escrow deficiency threatened the scheme, Capriotti and Hargrove created Intercounty National Title Insurance Company (New Intercounty), an alter-ego for Old Intercounty, and transferred Old Intercounty's $30 million escrow deficiency to New Intercounty's escrow account. When the scheme came crashing down in Spring 2000, Fidelity was left to make good on a $35 million escrow deficiency and promptly filed suit against Old Intercounty, New Intercounty, Capriotti, and Hargrove, and others who may have been involved in the scheme. *Fidelity v. Intercounty, et al*, 00 C 6658 (Conlon, J.). According to Fidelity, it was only through discovery in *Fidelity v. Intercounty* that it learned in February 2001 of the allegedly fraudulent transfers that form the basis of this complaint.

2

In January 2002 Fidelity filed these suits, alleging that Capriotti and Hargrove used escrow funds in both Old and New Intercounty accounts to purchase CDs from an individual Bank Defendant. Fidelity further alleged that Capriotti and Hargrove then fraudulently transferred the CD to the respective Bank by pledging it to secure a loan and again by liquidating it to pay the Bank for the loan.

## II. Standard of Review

For the purposes of a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). In ruling on a motion to dismiss, the Court considers whether relief is possible under any set of facts that could be established consistent with the allegations. *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 80 (1955); *White v. City of Markham*, 310 F.3d 989, 992 (7th Cir. 2002). A claim may be dismissed only if no set of facts would entitle the plaintiff to relief. *Conley*, 355 U.S. at 45-46; *White*, 310 F.3d at 992.

## III. Discussion

A.  *Statute of Limitations*

The UFTA's statute of limitations provides that a claim must be brought within four years of the fraudulent transfer or, if later, one year after the transfer or obligation was or could reasonably have been discovered by the claimant. 740 ILCS § 160/10(a). Under the discovery rule utilized by § 160/10(a), the statute of limitations begins to run when a person knows or reasonably should know both of his injury and that his injury was wrongfully caused. *Knox Coll. v. Celotex Corp.*, 88 Ill.2d 407, 414, 430 N.E.2d 976, 979 (1981).

The Bank Defendants argue that the statute of limitations period began to run at the latest in Spring 2000, when Fidelity first learned of the overall fraudulent scheme.

Defendants, however, confuse the injury Fidelity suffered from Capriotti's and Hargrove's scheme to siphon funds from the escrow accounts with the injury Fidelity suffered from the fraudulent transfers committed to conduct that scheme. Fidelity knew of the former in Spring 2000, but not the latter. *Cf. Ventre v. Datronic Rental Corp.*, No. 92 C 3829, 1996 WL 681279, *8 (N.D. Ill. Nov. 21, 1996) (knowledge of one kind of fraud by one party does not necessarily constitute notice of another type of fraud by another party). While it is true that by Spring 2000, Fidelity should have known that it might have a *possible* cause of action for fraudulent transfers and thus should have investigated further, see *Gilbert Bros., Inc. v. Gilbert*, 258 Ill. App. 3d 395, 399, 630 N.E.2d 189, 192 (1994), it does not follow that Fidelity *knew* that it had been injured by fraudulent transfers. To hold otherwise would require Fidelity to take a shot-gun approach to filing lawsuits—filing suits against any bank that *might* have received a fraudulent transfer. And Fidelity alleges that it did investigate further, pleading that it could not have discovered the fraudulent transfers until February 2001, when it learned of them through discovery in its suit against the perpetrators of the scheme. *See Kent v. Celozzi-Ettleson Chevrolet, Inc.*, No. 99 C 2868, 1999 WL 1021044, *6 (N.D.Ill. Nov. 3, 1999) (allegation that fraudulent conduct was concealed sufficient to defeat statute of limitations challenge). Whether Fidelity could have reasonably discovered the fraudulent transfers prior to February 2001 is an issue of fact. Although a plaintiff may plead itself out of court when it alleges facts to show that the

statute of limitations bars its claim, the Court cannot resolve the statute of limitations issue on a motion to dismiss when the discovery rule raises an issue of fact. *See, e.g., Kanthar SDN BHD v. Sternberg*, 149 F.3d 659, 669-70 (7th Cir. 1998); *Figueroa v. City of Chicago*, No. 97 C 8861, 1999 WL 163022, at *11 (N.D. Ill. Mar 12, 1999). The Bank Defendants' motions to dismiss Fidelity's complaint based on statute of limitations grounds is DENIED.

B.  *Adequacy of the Pleadings*

Several of the Bank Defendants also argue that Fidelity has not set forth specific allegations detailing the time and place of the fraud as required by Fed. R. Civ. P. 9(f). In short, Defendants rely upon *In re Josefik*, 72 B.R. 393 (Bkrtcy. N.D. Ill. 1987) to argue that Fidelity has not pled specific facts to establish why it could not have discovered the fraud sooner. The Bank Defendants' arguments are without merit. Fidelity alleged numerous facts detailing the complexity and active concealment of the fraud by Intercounty. Fidelity alleged that the perpetrators of the scheme used bogus accounting to hide their fraud. Fidelity further alleges that the perpetrators of the scheme created the alter-ego, New Intercounty, to hide the financial instability of Old Intercounty and perpetuate their scheme. The Court finds that Fidelity has pled the details of the concealment of the fraud with sufficient particularity to defeat the Bank Defendants' Rule 9(f) challenge.

C.  *Fidelity's Status as a Creditor Under UFTA*

Three Bank Defendants — Bridgeview, LaGrange, and TCF — argue that Fidelity is not a creditor for purposes of the UFTA. Under the UFTA a creditor is an entity that has a claim against a debtor. 740 ILCS § 160/2(c). A claim is defined as, "a right to payment,

whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 740 ILCS § 160/2(c). The three Defendants argue that Fidelity has alleged only that it is a creditor of *New Intercounty*—by virtue of payments made in 2001 to its reinsurance contract with New Intercounty and the closing protection letters that indemnified New Intercounty customers—and not a creditor of *Old Intercounty*, the transferor for these three Defendants. Defendants focus most of their attention on the argument that Fidelity did not plead sufficient facts to demonstrate that Old Intercounty and New Intercounty should be treated as one entity. But, as noted above, Fidelity has alleged that Capriotti and Hargrove created New Intercounty as a shell corporation, with no assets, and immediately transferred Old Intercounty's escrow deficiency to New Intercounty's books. Evidence of commingling of funds, using corporate funds for personal expenses, undercapitalization, and failing to maintain appropriate corporate formalities are all sufficient to pierce the corporate veil and show that *both* Old Intercounty and New Intercounty are only alter-ego's of the perpetrators of the scheme—Capriotti and Hargrove. *Dimmit & Owens Financial, Inc. v. Superior Sports Products, Inc.*, 196 F.Supp.2d 731, 741 (N.D.Ill.2002); *Main Bank of Chicago v. Baker*, 76 Ill.2d 188, 205, 427 N.E.2d 94, 102 (1981). Fidelity is not required to plead every detail necessary to prove that Old Intercounty and New Intercounty should be treated as one entity; it need only plead facts sufficient to place Defendants on notice of the nature of its claim.

In any event, the UFTA does not require Fidelity to prove that Old Intercounty and New Intercounty should be treated as one entity to maintain a claim against Old Intercounty. To properly plead a claim under the UFTA, the creditor must demonstrate only that the debtor "owes or potentially owes a 'payment' to the creditor." *A.P. Prop., Inc. v. Goshinsky*, 186 Ill.2d 524, 528-29, 714 N.E.2d 519, 521-22 (1999). Fidelity has five cases of action remaining against Old Intercounty in *Fidelity v. Intercounty*, 00 C 6658, and so under the plain language of the statute is a creditor. *See Levy v. Markal Sales Corp.*, 311 Ill. App. 3d 552, 557, 724 N.E.2d 1008, 1012 (2000) (the statute of limitations sometimes requires a creditor to initiate action before judgment to preserve a claim in fraudulent transfer cases). Bridgeview's, LaGrange's and TCF's motions to dismiss Fidelity's complaint against them on the grounds that Fidelity is not a creditor under the UFTA is therefore DENIED.

D. *Transfer of Assets*

LaGrange argues that Fidelity's UFTA claim fails because it cannot allege that a transfer took place because Old Intercounty never had any property interest in the funds it used to purchase the CDs. According to LaGrange, the UFTA requires that a debtor "transfer an asset" and defines an asset as the "property of the debtor." *See* 740 ILCS §§ 160/2(b) & 160/5(a). LaGrange argues that because Intercounty *stole* the money from the escrow accounts that it never acquired any title or interest in the goods it stole, and thus could not have transferred any "property of the debtor" as required by the statute.

LaGrange's argument is curious. That is because just as it is elementary that a thief does not acquire title, so too is it elementary that a thief cannot pass good title. *See Scholes*

7

*v. Lehmann*, 56 F.3d 750, 759 (7th Cir 1995); *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 291 (7th Cir. 1990). Thus the Bank remains obligated to return the funds transferred to it by Intercounty to the escrowees, or in this case, Fidelity since Fidelity stands in the shoes of the escrowees on the basis of subrogation and assignment rights.

But the Bank's premise that Old Intercounty had no interest in the property it transferred is wrong for two reasons. First, while it is true that a thief cannot pass good title, most frauds can, and thus the fraudulent conveyance statute enables the owner to set aside the transfer. *Scholes*, 56 F.3d at 759-60. Indeed, in *Lawyer's Title Ins. Corp. v. Dearborn Title Corp.*, 22 F.Supp. 2d 820 (N.D. Ill. 1998), the creditor used the UFTA to undue fraudulent transfers made by an escrow agent who siphoned money from escrowees accounts. LaGrange protests that the issue of whether an "asset" was transferred was never litigated and so the precedential value of *Lawyer's Title* is limited. The Court disagrees. Second, LaGrange's argument is premised on the assumption that Old Intercounty is an ordinary thief with *no* interest in the assets it transferred. But Old Intercounty is not a pickpocket who swiped wallets from passersby its front door. It was a title insurance agent. As such, Old Intercounty was a trustee of the escrow funds that it managed and not only owed fiduciary obligations to the parties to the real estate transactions, but was obligated to make specific disbursements of the funds. *See, e.g. TRW Title Ins. Co. v. Security Union Title Ins. Co.*, No. 93 C 7555, 1994 WL 194262, *2 (N.D. Ill. May

8

16, 1994). In other words as a title insurance agent, Old Intercounty *did* have some interest in the assets that it transferred.

For the foregoing reasons, LaGrange's motion to dismiss on the basis that Fidelity cannot show that Old Intercounty transferred any assets within the meaning of the UFTA is DENIED.

E.   *TCF's Affirmative Defense*

Lastly, TCF argues that 740 ILCS § 160/9(a) provides a defense for a person who took in good faith and for a reasonably equivalent value. TCF contends that Fidelity failed to allege that TCF was in collusion with Old Intercounty, and therefore cannot state a claim because of § 9(a). But § 9(a) provides an affirmative defense. Fidelity is not obligated to plead facts to negate an affirmative defense; it need only properly allege the *prima facie* elements of its fraudulent transfer claim. *Tregenza v. Great Am. Communications Co.*, 12 F.3d 717, 718 (7th Cir.1993); *In re Spatz*, 222 B.R. 157, 168 (N.D. Ill. 1998).

## IV. Conclusion

On a final note, the Court notes that Standard's motion to dismiss is its fourth. It filed three 12(b)(6) motions when its case was pending before Judge Conlon, all of which were denied. The day before the case was transferred to this court, Standard filed a motion pursuant to Fed. R. Civ. P. 12(c), raising essentially the same arguments that had been rejected by Judge Conlon three times previously. The Court cautions Standard that Rule 11(b) prohibits an attorney from filings presented for improper purposes (such as to delay the proceedings) or from making legal arguments not warranted by existing law (such as

bringing essentially the same motion to dismiss four times). The Court further cautions Standard that Rule 11(c)(1)(B) allows the Court to raise Rule 11 violations *sua sponte*. Standard is advised that future repetitive filings will not be tolerated.

For the foregoing reasons, the Bank Defendants' motions to dismiss are DENIED in their entirety. Defendants shall answer the complaint by February 24, 2002.

February 10, 2003
Date

The Honorable John W. Darrah
United States District Court

10